Good morning, Your Honors, and may it please the Court, Brianna Mircheff on behalf of Walter Prezioso, I intend to reserve about five minutes of my time for rebuttal, and I'll endeavor to watch my own clock. This case is about a tax trial that turned on an advice of counsel instruction, and in I'm sorry, Your Honor. Advice of accountant defense. I knew I was going to do that, and here I got it out of the way in my first 30 seconds. And the two errors that we allege went to that defense. The first is whether the jury was improperly instructed that it had to find that Mr. Prezioso reasonably relied on the advice of his accountant when the Supreme Court laws to the opposite. And the second is whether the district court improperly precluded defense counsel's professional standards expert from testifying to his accountant's incompetence. These two errors went right to the heart of Mr. Prezioso's defense, and because this was an exceedingly close case, we're asking that this Court remand for a new trial. How does the exclusion of Mr. Laffer as an expert go to the heart of the case when his sole testimony was about conduct among accountants, and the question was, did the taxpayer properly disclose all the information to the accountant? How is that relevant, and how is that anything other than the taxpayer's attempt to put the spotlight on the CPAs and off of himself? So we've said that there's Why was it improper to exclude that testimony? We've said that there were two grounds of relevance here. One was that there were errors in the tax return that the defense had to explain. Those errors were either the result of somebody's incompetence, or they were the result of somebody's fraud. And by showing that the accountants involved in this case did not act up to professional standards, we believe that was relevant to It would go to prove that there was more than likely not incompetence on the part of the accountant. That's not mutually exclusive with fraud, but it does tend to show that the results that the errors that are in the tax return are the result of the accountant's incompetence. But the real question before the Court was not, was the accountant competent? The question was, did the taxpayer fully disclose all the information to the accountant so when the accountant gave advice, it was reliable and could be the basis of the defense? So the focus was on the taxpayer, not on whether the accountant was competent or not. So why would this testimony from an expert who's solely going to talk about accounting standards and accounting conduct among professional accountants, why is that not confusing and irrelevant? Well, and again, so our first ground would be that we think it gives an alternate explanation for the errors that were in the tax return. The second ground But you don't think because it goes to strictly that alternative, it's not confusing on the first point? I would say, and here's the second ground that we thought it was relevant to. Much was made in this trial about the various things that Mr. Precioso did not disclose. I think in footnote two of our reply brief, we list this colloquy that occurred with Jensen, the accountant who was relevant to count five, and all the various things that he said, Mr. Precioso didn't disclose. I'm sorry, go ahead. I'm sorry, I didn't mean to interrupt, but did you ask about the duty of inquiry to any of the other accountants that testify? We did. In particular, I think we got the most into this with the IRS expert that was Special Agent Langer. She gave, I'm sorry, I don't want to interrupt. She gave testimony that was directly contradictory to what Mr. Laffer would have said. She said that the accountant is allowed to rely on the information provided by the taxpayer. Laffer would have said that the information that was provided here was sufficient to give rise to a duty of inquiry on the part of the accountant as to whether these expenses were included on the W-2. But were you limited in your cross-examination of that accountant? No, we were not, although I admit we were a bit caught off guard. She had said that she wasn't a professional standards expert, and therefore when she got into this testimony, I'm not sure it was entirely what we anticipated happening there. Those are the true grounds that we believe the professional expert was relevant. And again, this was a case where the government presented three accountants and an IRS tax expert. We were trying to counter that barrage by showing that the accountants weren't acting up to snuff, and that the information Mr. Precioso disclosed was sufficient. I do want to make sure I cover the jury instruction issue as well, because I actually think in some ways that's the clear error. And the jury instruction, are we not looking at that for plain error? I don't think so, Your Honor. In this case, we have a written objection, that's at ER 55. We have an oral objection that added more flavor to that, right? You have a written objection prior to the deliberations by the jury? Yes. I'm sorry. I know there was an expansion of the objection at a bail hearing, but my reading of the record was that there was simply a statement that it might be confusing, an oral objection, to the extent that's an objection. Was there ever a time where counsel for your client said to the trial court, I object to this instruction, before the instruction was given? So there was a formal written objection, that's at ER 55, and that was in the process of the jury instructions. There was disputed jury instructions, and at that point, the defense indicated that it did not believe the instruction was necessary. I looked at what you cited in your briefs, which was ER 1144-45, I think, and I didn't see any indication that the district court thought that was the same argument as the bail hearing. So I'm trying to find the same thing. I'm sorry. So ER 1140-43-44, that's the bail hearing, and so I'll go back to that. After the deliberations. Exactly. Where's the ER record? ER 55 is where the written objection occurred, and I agree that that objection was somewhat limited. As an appellate attorney, I wish it had been more fulsome, right? But then in the oral, in the hearing on the jury instruction, this is where the defense counsel said, I think that the instructions are confusing and send mixed messages. So this is where we're talking about the two different instructions, right? The willfulness instruction that said, only requires good faith, and it doesn't need to be reasonable, with the advice of accountant instruction that required a reasonable reliance. But the oral statement to the trial court was, it might be confusing, it might send mixed messages, but never, Your Honor, I object to that, it would be improper to give that instruction to this jury. Never anything approaching that. Those words weren't used, but again, I don't think this was a radically different argument than what we're raising here. And again, And you agree that the law in the two instructions is accurate, that there's not any error in the legal content of the instruction is given. Well, in that, I think it's useful to perhaps distinguish between the two objections we have to the jury instruction. I think there's one piece of this that says, the general willfulness instruction said, a defendant who acts in good faith does not act willfully, even if his understanding of the law is wrong or unreasonable. And that's directly from Cheek. And then the advice of accountant instruction said that the defendant had to reasonably rely on the advice in good faith. That part of it, I do think, is actually simply an incorrect statement of law. I think that is part of the instruction has not kept up with the changes that have come in the willfulness instruction. In the willfulness instruction, in this court's model instruction 5.5, the court has acknowledged that there cannot be a model instruction for willfulness because willfulness, somewhat chameleon-like, depends on the context in which the case arise. The advice of accountant instruction, though, still attempts to be a one-size-fits-all instruction for all variants of willfulness. So, are you, what's your argument regarding Bishop? Bishop only, Bishop only relates to the disclosure piece. So it doesn't affect this argument. And if I can close the loop, then I'll come back to Bishop in just one moment. So on this piece, I do think there's a simply incorrect statement of law. You've got one instruction that requires reasonableness. You've got one instruction that says unreasonable is enough. And I think the reasonable was the incorrect statement of law on that point. Now, on the disclosure point, right, one of the instructions required disclosure of all material facts, an unqualified statement of the duty. It never made clear that that instruction was also subject to Cheek and Cheek's requirement that the taxpayer need only act consonant with his good faith understanding of what the tax law required. And so in that case, I do think that it's a correct statement of law. I just don't think it was clear to the jury how these two different, these two instructions interacted. So are you asking us to presume the jury doesn't have a modicum of common sense and ability to sort through these instructions without being irrevocably confused? I think that, of course, I think the jury has tons of common sense. What I think was difficult here was that there were two instructions that pointed in different directions. One required reasonableness, one did not require reasonableness. At no time during the trial and during their deliberations did the jury send out a note to the trial judge, explain to this, explain to us how these two instructions relate to each other. There was never a question raised by the jury during the deliberations, right? There were three questions, but none of them went specifically to this. None of them went to this. Correct? That's correct, Your Honor. Let me ask one other question. Are you conceding on the doctrine of optional completeness issue? You haven't raised that in your argument so far. I'm not conceding it, Your Honor. I don't think it's the strongest of the arguments we have. I think the strongest argument we have is the reasonable versus unreasonable, the contradicting disclosure requirements. And particularly on the reasonable versus unreasonable part, I think even if we were subject to plainer, we would survive that standard. Because Cheek is so clear that the taxpayer's belief need not be reasonable, it merely needs to be held in good faith. And so on that point, I think we would survive the plainer standard. What about the introduction of the prior testimony? I want to find out why the reading from Mr. Precioso's prior declaration wasn't enough to cure the completeness problem that I think you're trying to argue about here. I mean, I think that the clearest answer to that is the fact that the reading of the prior trial testimony gave the impression that Mr. Precioso had testified on another occasion under oath contrary to the testimony that he gave at this trial. So even though he was able to present yes on a different day, he said a different thing, it starts to sound as if he simply is saying different things on different times, when in fact his story has been consistent throughout. I'm hoping to reserve a little bit of time if that's all right. Thank you, Counsel. Thank you, Your Honor. May it please the Court, Nancy Spiegel for the United States. I'd like to start by putting these alleged errors in a bit of context. And I just would like to point out that most of the errors, if there are errors, are indeed harmless in the end. So first of all, the defense here was lack of willfulness. It wasn't advice of accountant. The defendant did not argue advice of accountant in his closing, did not rely on it at all. And his lack of willfulness argument was successful, and he was able to receive an acquittal on all but one count. And that one count dealt with a time period, it dealt with the 2013 personal income tax return. This was after the time that the first accountant, Kaven, had passed away and the new accounting firm, KKAJ, had taken over. And the gravamen of any kind of advice that defendant claimed he received was advice received by Kaven. He never contended that he received any advice regarding how to classify his personal expenses from KKAJ. And in fact, he admitted that he merely told them that the company was paying some of his expenses and didn't go any further. So as to the advice of accountant instruction, it really doesn't apply to the count of conviction because that was the KKAJ count. And... So you're saying the expert testimony, maybe I'm reading too much, the expert testimony doesn't apply to his count of conviction? I'm saying that the advice of accountant jury instruction doesn't apply to the count of Does the expert apply to that conviction? Well, what we argued in our briefing, we contend still, is that the proffer presented by the defense for the expert didn't talk about anything specific to KKAJ and... So if there was any error, it was harmless? It was harmless, especially because in addition to cross-examining the government's IRS expert, the defense cross-examined at length Mr. Jensen, who is one of the partners at KKAJ. And they were able to extract from him all the information about the duty of inquiry, the fact that he knew about the accounting standards, that certain information provided by a client does trigger a duty to inquire, that the defendant did say that some of his personal expenses were being paid by the company, and he admitted, Jensen admitted, that he didn't inquire further. And I think that's all the defense needed. But here, there were, I guess, was there three experts for the government? Well, there were three accountants and then the IRS agent. And the defendant tried to get his person and was not allowed. And I know that the First Circuit in the case of St. Pierre explicitly said there may be duties and professional standards of an accountant are relevant. So I'm just trying to figure out why wouldn't this be one of those cases? Because the facts of this case are similar to those of St. Pierre in the sense that St. Pierre involved somebody who was diverting company income into her own personal bank accounts. And her purported defense was that the accountants should have inquired about some of, you know, why these monies weren't all going into the company account. And the First Circuit said that the negligence, any negligence of an accountant doesn't negate willfulness on the part of the defendant. And I think that's the case here. If your defense is, which I believe the defense is here, but you can correct me on this. I disclosed all the information I thought that my accountant needed and I expected. If the accountant needed anything more than he would ask, I guess I'm just trying to figure out why wouldn't it be helpful and relevant to have testimony from an expert saying that any good accountant would have asked for more information? Well I think it's not relevant, again, because we're talking about whether the defendant himself acted willfully, not, you know, whether his accountants were negligent. And so here it doesn't matter, you know, what the accountants did or didn't do. It's the fact that did the defendant know or not know when he was mischaracterizing the expenses and the company books that those should have been characterized as compensation on his W-2 form. Let me ask a question, counsel. The defendant here was charged with multiple counts, convicted on only one of those. Yes. The count convicted on equated to approximately $16,000 in tax losses to the government. The counts acquitted on accounted for something over $200,000 of losses to the government, but yet he was sentenced to 24 months in prison on the one conviction? And is it fair to take the losses to the government that he was not convicted on but acquitted on into account in rendering a sentence of that severity? It's well settled in this circuit that the court can consider acquitted conduct as well as uncharged conduct. And you don't see the disparity in those things and you don't think that should have been whether it could have been considered, should it have been considered. I think that it was properly considered in this case. What did you ask for? What did you recommend to the court? I'm sorry, I don't remember, Your Honor. But in any event, the defendant's sentence of 24 months was a below guideline sentence even if you take the acquitted conduct out of the equation. So I don't think it had a material effect on the sentence in the end. All right. Were you trial counsel for this case? I was not, Your Honor. The court has no further questions. The government will submit. It appears not. I just want to raise two quick points on that, Your Honor. The first is, you know, the government got up and said that Mr. Precioso didn't rely on advice of accountant. I think that's the lie by the record. I think the closing was an extended analogy to when you hire a plumber and you pay a plumber and you tell them to come in and nothing happens and year after year your pipes are fixed and nothing happens, then you assume that your plumber is doing a good job. And the same is true of the accountant. I think this was all sorted out before the jury. All this evidence was presented to the jury, correct, for the jury to decide whether or not the defense was persuasive or not. That's true. I simply want to point out that I don't think it's correct that you can write off any jury instruction error because we didn't rely on advice of accountant. I think our closing argument and indeed all of our crosses and everything went to advice of accountant. But supplying fulsome information of intricate tax acts and consequences to your CPA is a whole lot different than calling a plumber and saying, are my pipes okay? It is, but I think the analogy in some ways holds. The issue here is what did your client do, what did your client fail to do. And the level of what's required of a consumer who calls a plumber is a whole lot different than the duty that's on the taxpayer to fully disclose the relevant information to their accountant. So perhaps it was a bad analogy. I simply want to make clear that this was our defense and that any instructional error relating to the advice of accountant wouldn't have been harmless because this was the crux of our defense. I mean, didn't the government read into the record during the trial your client's position that he thought he had given all the information he should have to his accountants and he relied on his accountants? Wasn't that fully laid out as Judge Rawlinson said before the jury? That was laid out. There was a declaration from the civil case that was read to the jury. But at the same time, there was testimony from the first trial that made it appear that on a different occasion he had said something different. And that's because the testimony was carved out in ways that we believe was misleading. And that's your doctrine of optional completeness argument? Yes. Although I think if the testimony is misleading, the rule of completeness is only one of the ways that we would say that the testimony should have come in. Under Stever, we would say that misleading testimony, there has to be some remedy to that for constitutional reasons. I just don't see where the harm is when the government clearly put into the record your client's posture and position. And I'm afraid I don't have any answer other than the one I've given. Okay. So perhaps I'll have to agree to disagree. Unless the court has other questions, I'm prepared to submit. It appears not. Thank you to both counsel. The case just argued is submitted for a decision by the court. The final case on calendar, United States v. Mays, has been submitted on the briefs. That completes our calendar for the morning. We are on recess until 9.30 a.m. tomorrow morning. All rise. This court for this session stands adjourned.
judges: Rawlinson, Murguia, Gilstrap